Five cases, two of them are being submitted without argument on the brief later today. They are Appeal Number 07-3103, Baxter v. Veterans Affairs, and Appeal Number 07-5065, Jackson v. United States. On the three-case argument list, we'll hear argument first in Appeal Number 06-3430, Swagel v. General Services Administration. Mr. Margulies, good morning. Good morning, Your Honor. Welcome. Thank you. Before you proceed, I take it that you, substitute counsel, are content to rest on the brief previously submitted by Mr. Mark Howes. Yes, I'm from his office, Your Honor. Yes, we are. Very well. Your associate is in front. With that, please proceed. Thank you, Your Honor. My name is Howard Margulies, and I'm here today to represent Howard Swagel. Mr. Swagel had been a police officer for 29 years. His last duty was with the Federal Protective Service. In March of 2004, he was removed from that service. But would we know the facts? The real issue is whether there's any indication in the record that the agency was considered a penalty less than removable. If they had known that one of the two charges leveled against him would not be sustained before the Merit System Protection Board. Thank you, Your Honor. Let me get directly to that. And I got the case back precisely to decide that. Did I decide that? Yes, Your Honor. The first issue was, and this Court said to the Board, to pay particular attention to the deciding official's language in the letter of removal. And I won't repeat that language. It was part of your remand order. The Board then took that language and said, because there was no testimony offered by the agency on this type of – on this point, the threat and how it impacted the removal. Therefore, we infer that this is evidence that they did not take as seriously the charge of a threat. You might consider that we're not evaluating the quality of the Board opinion in terms of what else it might have said. We're, I suppose, bound by the fact findings of the Board. But on the other hand, we have the testimony of the deciding official, also part of this record. Isn't that right? Yes, we do. Now, when you read all of his testimony, it seems to me that one of the things he says is that he had to conclude that this patrol officer had been seriously derelict in patrolling duties as assigned and was considered beyond rehabilitation because so many efforts had been made in the preceding 40 years to rehabilitate him. Putting aside what the Board opinion said, why isn't the testimony of that deciding official sufficient on its face to justify the removal penalty, even putting aside the threat charge that was not sustained? I think there are four reasons, Your Honor. First is the timing of the deciding official's decision. And let me say, when he testified, he was testifying in support of his decision to remove Mr. Zweigel. And the decision to remove Mr. Zweigel was based on two factors, the performance charge and the threat charge. When Mr. Greco, the deciding official, made his decision and testified in court in support of that decision, he was testifying based on both charges. There's no doubt about that because we— You're not addressing my question, which has to do with the conclusion of the deciding official that Mr. Zweigel was beyond rehabilitation. Therefore, there's no alternative left except to remove him. We know that the deciding official investigated the possibility of another job. And let me ask the court to key on that testimony. He said, we looked into it. Under the circumstances, we could not find another job for Mr. Zweigel.  Are you disagreeing that he was found by the deciding official to be non-rehabilitable? I agree that the deciding official, in his testimony, that was part of his testimony. He was asked, and he specifically said exactly the court assigned him. Given that testimony, how could there be any alternative seriously considered other than removal? Because we know that the deciding official was considering both charges. And we know that the deciding official said that when both charges were before him, he still looked into another position for Mr. Zweigel. And we know that when the deciding official looked at both charges and said, is there another job for this man? He said, under the circumstances, we couldn't find a job for this gentleman. I would agree that under the circumstances to me, given his constant systematic dereliction of patrol duties, there's no patrol job for which we could ever consider assigning him. Your Honor, most respectfully, I think it is proper to read that testimony that he's saying, this gentleman had a performance charge, and we looked into another job for him. I mean, why look into another job if there's no issue at all? What held up the other job, the other position, was the threat. The circumstances that, and we know that from the deciding official's letter. The letter is so strong in its condemnation of the threat that it pales, that the charge of the performance pales in comparison. You are correct in that the testimony presented before the board, the only questions asked of him were concerning the performance charge. And that was the decision of the agency, how to present their case. I'm confused. His job essentially was to patrol. They found over the course of five years that he didn't carry out his patrol assignment. And he was suspended several times and reprimanded several times for exactly that, not carrying out his assigned patrol duties. And in view of that, I don't see how there's any other patrol job that he could have been considered fit to hold. Your Honor, the deciding official testified that he looked into other positions for this gentleman. And he said, under the circumstances, I couldn't find it. We don't know exactly what he meant by the circumstances. No one asked him, neither the agency or the employee's representative. I understand that. But what I'm saying to the court is that when you take the whole package, the deciding official's decision letter, which is part of the record, you take the deciding official's testimony at the proceedings, and you look at what the deciding official is saying, and one other point I want to point out is that the deciding official, and this wasn't noted either by the board or in our brief, the deciding official based his decision on the proposing officer's notice of removal. That was Lieutenant Mound. It's in our joint appendix at, I believe, page 40, I believe it is. But in any event, there were two notices of removal. I just want to point this out. Before the deciding official got the case, the first notice of removal said, we want you to remove from the agency, but we want you to remain in active duty status. That was the first notice. That dealt with the performance charge. The deciding official didn't get the notice at that point. There was a second notice that came out within a week or two later at page 41 of the appendix, and Lieutenant Mound, the proposing official, said, this is too much now. The threat you've made goes beyond the payout, and we can no longer keep you in the service. Hand in your badge. You're no longer on active duty status. He immediately took them off. That is the context in which the deciding official made his decision to emphasize the importance of the threat, and then when he testified, the only questions asked of him were of the performance charge. But his testimony paralleled the testimony from his letter, which was based on both the threat and the performance charge. We've argued that the threat, similar to the Russo case, was the lynchpin charge, the more serious charge, and different from the chance versus the vow, which was the sexual offense, which was the more serious charge. We're not saying that both charges aren't important, Your Honor, but we are saying that the more egregious charge clearly is the threat, and once that charge is removed. But that's not what the board held on remand, and isn't there substantial evidence for its finding? What the board held on remand was that they could infer from a silent record that the deciding official's documentary letter, they say, we infer that the official did not necessarily view the second charge of threat as more serious than the first charge, and they made that decision solely because, and I think it's improper, because there was no evidence presented by the agency, and then they impermissibly said, and no evidence presented by the employee from the deciding official to show. Do you think you're going to get a different result if we send the fact for a further review? Well, there's two ways to look at it. If you follow Russo, I would ask that because the lynchpin charge is removed, that you remand to the board to impose a lesser penalty on removal, or if you find that there is an indication based on the language in the letter and the fact they looked into a second job and the fact that the proposed actions allowed them to stay on the job, if you take all that into consideration and say that that is evidence that the agency, once you take away the heinous threat charge, there's a significant possibility they may have considered a lesser penalty, that you would order the board to remand to the agency. And I think we have a significant chance, with the threat out of the way, of finding that this gentleman, so close to retirement, could be taken back in. Could I, let me see if I understand the point you were making a little bit earlier about the difference between the two notices of promotes removal, the first on February 11th and the other on February 23rd that incorporates the threat, the second charge, the threat charge. Were you suggesting that the, on the basis of the first notice, that is a notice of promotes removal, that was the proposed sanction, correct, on the first of February 11th? Yes, that's the, that's the proposing officer's notice, not the deciding officer, correct. Right, right. So the two proposals in terms of the bottom line were for the same sanction, right? Yes. Okay. What was the argument you were making? Well, the argument that I said, that I concurred. Wait until the question is over. I'm sorry. I'm sorry, Your Honor. You were saying that the difference between the two proposed removal letters cuts in your favor, and I didn't follow that. Yes, Your Honor. The first removal letter says, stay on active status. They don't ask for his badge. They say, during the event. Pending removal. Pending removal, exactly. Okay, but ultimately, removal is nonetheless the sanction. It's the recommendation of the proposed, no, I apologize. It's the recommendation of the proposing official. The deciding official gets it after both are concluded. I understand the point. Thank you. Let me see your proposal. Yes, sir. Thank you. Thank you, Mr. Barbieri. We're here for the Council of Government now. Mr. Hipp. Thank you, Your Honor. Do we agree that the burden of proof is on the government, that if the threat charge had never been leveled in the first place, the deciding officials would clearly have ordered removal? Do we agree on that burden? I would not agree with that, Your Honor. The burden on him to prove the negative? Well, Somebody has a burden here. The instructions that are set up in the Lashansky-DeVault case instruct the board to make an independent determination based upon a review of the record. DeVault does not talk about this in terms of burden, but it does say that the agency can indicate a desire to impose a maximum penalty through silence. So the board has to find some sort of affirmative indication in the record that the agency desired to impose a lesser penalty in order to do that. So what you're saying is if the board comes to a position that says there's no indication either way, then you move beyond the chances you go to the question of reasonableness of the penalty? Exactly right. All right. And we believe that there's three sources of substantial evidence that support the board's decision here. First is the removal of the decision itself. Up to the point, the controversial two words, more importantly, up to that point, the tone of the letter is very harsh condemning the employee's conduct in just about the strongest terms possible, reviewing his record. Yes, but on the other hand, the conduct hadn't changed since 2001 when he was doing the same thing and not visiting all the sites and buildings he was supposed to be inspecting. Conduct hadn't changed. It had continued. They didn't fire him before. Why are you so sure they needed to fire him this time? Well, the removed official's decision that Mr. Swift could not be rehabilitated, I think, is the reason. This was an employee who had been given several chances. He had a five-day suspension, a 10-day suspension. He was on notice that his performance was deficient and yet could not improve. Do you know how often he was supposed to visit each site? That was the subject of the first appeal. He was supposed to investigate each one of his buildings at least once, and then he was supposed to— At least once what? In each tour of duty, each eight- or ten-hour time frame? On a given day, if I recall correctly, he was given a slate of buildings, and he has checkpoints, and he's supposed to reach the checkpoints in each building on that particular shift. And then within the building, he's supposed to reach certain other— So the competent performance or compliance with the orders is to visit each and every place that's listed on the assignment. That's correct. There was some testimony that some of the buildings he was supposed to visit he hadn't visited in five years, and there was some other testimony that some of the other places he was supposed to visit he hadn't visited more than once a month. That's why I'm trying to understand what the degree of dereliction is here. Can you help with that? Well, with respect, I believe that it's law in the case at this point, based upon the panel's decision in the first appeal, that he deliberately failed to carry out his assigned duties. Yes, of course, but I'm trying to understand the thinking of the deciding official. If the noncompliance with assignments is marginal, 10%, let's say, that's maybe less than removal. If day after day after day he refuses to visit some of the assigned sites, that's pretty gross, high-percentage noncompliance. I would think that would very much compel the decision of removal as the only possible alternative. As I stand here today, I guess I cannot quantify for you the noncompliance. I'd be happy to address that in a supplemental brief. But the overall context, which is one of the other bases for, I think, to support the decision, is that we're in a high-security environment. And protecting federal property has probably never been a higher priority. Even a small degree of deliberate refusal to carry out duties is very significant in that context when federal property and lives are at stake. We're relying on our federal security officers more than ever to protect them. Wait a minute, wait a minute. The level of concern that a supervisor might have today can't justify the thinking of this deciding official some years ago. Either his thinking was sound or it wasn't sound. But we can't alter his thinking then by what somebody in a similar circumstance might think today, can we? It's not even in the record. This is just pure rhetoric out of your head. It may be true, but it's not part of the record in front of you. It's not part of the thinking of the deciding official in this case who fired this officer. Isn't that right? Well, I would agree that it's not referenced in the record. It's just part of the overall context in which I think the agency was entitled or the board was entitled to rely upon in trying to ascertain whether there was an indication in the record that the board would have imposed a lesser penalty if not only the one charge would be sustained. The only other- Well, wait a minute. I'm sorry. What do you make of the argument that they looked for other jobs, that the deciding official acknowledged that he looked for other jobs, and then there's some possible interpretation of the verbiage in the testimony that he just couldn't find one. They were all filled. And the implication was, well, if one of them had been vacant, they would have transferred Mr. Zuego to that vacant position and he'd be still employed today. What's your response to that? I believe that the reason why the deciding official testified about the possibility of reassignment was I believe that he was just applying the Douglas factors. The 12 Douglas factor is the adequacy and effectiveness of alternative sanctions, and I believe it's probably the deciding official's obligation to at least consider the possibility of whether reassignment would be the right option here. So I believe that's how it came up. And with respect to what was actually said, I do submit that under the circumstances here, the situation includes-I mean, the circumstance is you have a federal security officer who is deliberately not carrying out his post. And under that circumstance, it would be very surprising, indeed, if there would be another position. Well, in that case, I would have expected the deciding official's answer to be, no, of course I didn't consider any other job for this guy. He was a terrible patrolman who never did his work. But that's not what he said. He seemed to say, yes, I considered other positions, but none were available. What are we to make of that? Well, again, if you look at- It sounds like he's just saying they're all filled. I don't have a vacancy because all the positions for which he would seem to be eligible had incumbents occupying them. You say it's self-evidently irrelevant to whether he was a poor performer and his poor performance justified the penalty on remand, that the reassignment question was a red herring, irrelevant. Well, that's exactly right. And again, if you look at the testimony, it's not very long. It looks like a checklist of the Douglas factors. I mean, some of the questions I think are almost taken word for word from Douglas. And again, the last- Who asked the question? Agency counsel. And was reviewing those. And I think, again, I think it may have been his obligation to at least consider the possibility of reassignment. He considered that possibility. He decided it wasn't a realistic possibility. And therefore, I don't think it can be construed as an indication that he would have imposed a lesser penalty. Well, what position did this man hold? Let's see. I believe the title is security officer. Or is he a federal police officer? I beg your pardon? Federal police officer, I believe. And what's the job description? What are the duties? I don't- I can't recite all the duties for you. The duties that he was- obviously part of his duties, the ones that he did not carry out were patrolling his buildings and patrolling closer to the building. Did he have any other duties besides patrol? I mean, I believe he had paperwork duties in connection with that. Well, of course, but that's part of patrolling, to report what you saw on your patrols. But did he have any other functions other than patrolling or reporting on his patrols?  I mean, if the position he held was patrolman and he didn't patrol, it's pretty hard to imagine what other position he could have been given. He wasn't a financial officer. He wasn't a radio operator. He wasn't a car mechanic. So he couldn't presumably hold those kind of jobs. He was trained and qualified and hired to be a patrolman, but he didn't patrol. Or he patrolled half-time, it seems. If you are a patrolman, who does not patrol, again, it would be very difficult to think of another job that he could be trusted to do. If he did not- if he did not do a very important job, the cabinet didn't trust him before. I guess we don't have any idea what these other jobs that were alluded to were. Whether they were patrol jobs or file room jobs or what they were. Right? We don't know. As I stand here today, I don't recall that. You were about to make another point. Is the testimony on this, is it limited to the one answer that shows up on page 49, about the middle of the page? If you have it there, it's quite the thing. It's just the agency counsel asked me, did you consider any other penalty, so to speak, other than removal? I said, well, you know, in a situation such as that, you see whether there's any other positions that may be available. Under the circumstances, we had no other positions that were available as well. Is that the sum and substance of that testimony? Yes, it is, Your Honor. Do we know if there was any cost in that? We have a limited amount of material. They moved on to another question, I guess. Agency counsel listed. Let's see. If you look at page 51 of the appendix, Ms. Paye, there did not have any processing. Okay. Thank you. And although I was about to move on to another point, the court anticipated my point with the question, so I covered the three points that I wanted to make, which were that the removal of the decision itself is a substantial evidence to support the agency's decision because it's so harsh in its condemnation of Mr. Zuegel and his performance. The second source of evidence is the hearing testimony, which does not refer to the threatening comment. And so that cannot, I don't think, be an indication that the agency would have imposed a lesser penalty. And the third part was the context in which you have a federal security officer with the very serious and sustained charge of not carrying out his patrols. And if you look at all three of those things, I think that the board's decision should be sustained. Is it your understanding that some substance of what we directed the board to do was to review RICO's testimony? No, Your Honor. I think that the board should have reviewed the entire record, I believe. Well, but what's in the record that's pertinent to the question of intended penalties for the dereliction on patrolling functions other than RICO's testimony? Well, I mean, his removal decision letter, I think, is relevant. Sure. And to the extent that we're trying to find something that isn't there because we're trying, you know, the government's position, of course, is that there is no evidence in the record. So, in other words, in order to find for Mr. Sguego, according to your understanding of the law and the remand and the obstruction, the board would have had to find in the testimony of RICO some indication that removal was only imposed because of the two charges taken together. If he had said something like that, then that would have changed the outcome. But given silence, the outcome can't change. That's correct because the Duval case says that the agency that silenced, that the agency can indicate its desire to impose a maximum penalty through silence. So there has to be something, there has to be a contrary affirmative indication that the agency decided to impose a lesser penalty. Contemporaneous, back at the time of their decision. Yes. Well, I suppose that the board could have decided, could it not have taken the more importantly language, the two words on which the initial remand terms, it could have said, balancing that against the fact that the testimony focused only on the performance and not on the alleged threat. Nonetheless, we think that in light of the importance of that language, we think that is an indication that that was the principal ground for the choice. And the board could have done that, I suppose. It could have made such a finding based on that language. Not as if there were no evidence suggesting that that was a significant factor in the ultimate penalty decision, you would say. No, with respect, I would disagree. I don't think that the removal decision would sustain an inference that the board decided to impose a lesser penalty. In other words, you would have said that that sentence in the letter is less than substantial evidence. If the board had come out the other way. If the board had come out the other way. I don't think it's evidence at all. What do you mean it's not evidence at all? Of course it's evidence. It's a letter. It's admitted in the records. It's weak evidence, but it's certainly evidence. It's not valid evidence. That's what I'm trying to say. All right. Thank you very much, Mr. Marguerite. Mark Julius. Thank you. Just briefly, Your Honor. On that last point, dealing with the letter, I ask the court, when you directed the board, you asked the board to specifically look at the language in the letter. So it's not just the testimony. And I'm not here to disagree that the testimony obviously is negative on behalf of my client. But in this record, we do not have only the testimony. We have the letter of the deciding official. And that's extremely important because that letter is part and part of his mental processes before he knows that the more serious charge is going to be not sustained. And I think that's important. And I say again, I know counsel for the agency mentions Lachance v. DeVal, and I also mentioned the Russo case. There is a third permutation that seems to have come out here, which is that when the lynchpin charge is removed, we don't necessarily remand from a silent record. We can, in Russo, they mitigated because they thought that this most serious charge had been removed. They mitigated at the board level. What I'm saying is I think there is evidence in this record, and I don't think it's right here. The thing about the testimony about the job, the letter itself, and the proposals from Lieutenant Mount, that is evidence in the record. As I understand the law in this area, the mitigation at the board level would occur in only one of two circumstances. Either one, the agency had made clear what penalty it would have assigned in the event that only one of multiple charges was sustained. Or two, the board concludes that the penalty ultimately imposed was unreasonable given what was upheld. Well, that's true. In Lachance, the deciding official clearly said this is the most serious charge, and it's the reason I fired him. The opposite, although it was one charge in Russo, the opposite was true in Russo. What we're saying here is that the deciding official had the most serious charge removed from his consideration, and therefore when I say that the penalty of removal should be less than the maximum penalty, which was removal in this case, and it should be less than that, we look at the fact that the lynchpin charge was removed, and we proceed the same way as in Russo. Well, that makes the assumption that the – which is an assumption that I understand the argument from the language more importantly, but it nonetheless is a conclusion that one has to reach from that language to say that that was the lynchpin charge, and there are indications to the contrary in the record. Let me respond in two ways. The testimony of Gregor. No, that's my fault. With respect to the lynchpin charge, I think the language is so clear that we have to say it's the more egregious charge. Now, whether we say there were co-lynchpins or we get into another inquiry, that's another story. But either from a silent record we're similar to Russo and we remain in that fashion directly to the board, or there are facts that I've pointed out that show that the agency official, the siding official, would not have fired this gentleman solely based on the performance without the threat charge, and then we're in the LeChan situation. Thank you very much. Thank you both. The appeal is taken under advisement.